IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TERRI TYLER, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:15-CV-3917-D |
| VS. § | |
| § | |
| CAROLYN W. COLVIN, ACTING § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION

Plaintiff Terri Tyler ("Tyler") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Titles II and XVI of the Act. For the reasons that follow, the court vacates the Commissioner's decision and remands this matter for further proceedings consistent with this memorandum opinion.

I

Tyler filed applications for DIB under Titles II and XVI of the Act in August 2012, alleging disability beginning December 24, 2010 due to back pain, panic attacks, depression, diabetes, glaucoma, high blood pressure, migraines, and nerve damage in her back. The Commissioner denied Tyler's applications initially and on reconsideration. Following a hearing, the administrative law judge ("ALJ") found that Tyler is "not disabled." P. Br. 4. The Appeals Council denied Tyler's request for review, and the ALJ's decision became the

final decision of the Commissioner.

In making his decision, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 416.920(a).  At step one, he found that Tyler has not engaged in substantial gainful activity since December 24, 2010, her alleged onset date.  At step two, the ALJ found that Tyler has severe impairments of degenerative disc disease of the spine status post-surgery with lower back pain; chronic pain disorder; insomnia; hypertension; diabetes mellitus; affective disorder; and anxiety disorder.  At step three, the ALJ found that Tyler's impairments failed to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that Tyler has the residual functional capacity ("RFC") to

> occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, except that the claimant can never crouch or climb ladders, ropes, or scaffolds; [to] occasionally balance, stoop, kneel, crawl, and climb ramps/stairs; [but Tyler] should avoid exposure to hazards such as dangerous machinery, driving a vehicle, or unprotected heights; and can understand, remember, and carry out only simple tasks and instructions.

R. 64.  These restrictions resulted from "severe physical impairments, which include lumbar disc disease, low back pain, chronic pain syndrome, insomnia, hypertension, and diabetes[.]" R. 74.  In making this determination, the ALJ gave little weight to, and ultimately rejected, all medical opinion evidence in the record that could have been considered.  At step four, the ALJ found that Tyler cannot perform her past relevant work as an electronics technician. At step five, where the burden shifts to the Commissioner, the ALJ found, based on the

vocational expert's ("VE's") testimony, that Tyler is capable of performing other jobs existing in significant numbers in the national economy, such as laundry folder, cleaner, and bench assembler. Accordingly, the ALJ concluded that Tyler had not been under a disability at any time between December 24, 2010 (alleged onset date) and July 25, 2014 (ALJ's decision date).

Tyler contends that the Commissioner's decision must be reversed because the ALJ's RFC finding is not supported by substantial evidence.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the Commissioner follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful

activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy.  *See, e.g., Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4).  "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five."  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).  At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam) (internal citations and quotation marks omitted).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact.  The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history.  *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified."  *Id.*  Reversal of the Commissioner's decision

is appropriate, however, "only if the applicant shows that [she] was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Tyler contends that the Commissioner's decision must be reversed because the ALJ's RFC determination was not based on substantial evidence, considering that he rejected the medical opinion evidence of Tyler's treating physicians, Oladele Olusanya, M.D. ("Dr. Olusanya") and Elizabeth Varghese, M.D. ("Dr. Varghese"), and Tyler's Global Assessment of Functioning ("GAF")[1] scores as assessed by various Metrocare staff members.[2]

A

Generally, controlling weight is assigned to a treating physician's opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. *Newton v. Apfel*, 209 F.3d 448, 455 (quoting *Martinez*, 64 F.3d at 176) (internal quotation marks omitted); *see also* 20 C.F.R.

---

[1] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)).

[2] Tyler does not challenge the Commissioner's decision on the ground that the ALJ failed to follow the proper procedure when rejecting her medical opinion evidence, as required by 20 C.F.R. § 404.1527(c). Although Tyler disagrees with the ALJ's rejection of the opinion evidence, she waived the issue in this court when she "elected to for[]go [the issue] for economy." P. Reply 6.

§ 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown." *Ranes v. Astrue*, 2009 WL 2486037, at *9 (N.D. Tex. Aug. 14, 2009) (Fitzwater, C.J.) (citing *Newton*, 209 F.3d at 455-56). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456 (citations omitted).

The ALJ stated that, to determine Tyler's RFC, he relied on "objective medical evidence, the relevant hearing testimony, and the opinion evidence to the extent credible." R. 78. As to the opinion evidence, the ALJ gave "little weight" to the opinions of Drs. Olusanya and Varghese, and to various GAF scores in Tyler's medical records, finding that they contradicted both objective medical evidence in the record and Tyler's subjective allegations of her symptoms. R. 77. The ALJ did not consider state agency assessments of Tyler's condition after Tyler invoked her right to cross-examine the state's consultants who completed the assessments, and the ALJ did not give an opportunity for cross-examination. These comprised the only opinion evidence in the record.

Dr. Olusanya completed two statements assessing the effects of Tyler's physical impairments—one in April 2013 and the other in February 2014. Dr. Olusanya based his

2013 statement on his diagnoses of back pain, chronic pain, insomnia, hypertension, diabetes mellitus, and anxiety. In the statement, he opined that Tyler could neither sit nor stand for more than 30 minutes at a time, nor could she be in either position for more than two hours total during an eight-hour work day. Dr. Olusanya estimated that Tyler would require approximately three hours of rest during an eight-hour work day for pain management and fatigue.[3] Tyler's impairments would also require that both legs be elevated to her waist level while sitting to facilitate circulation and minimize pain. And Dr. Olusanya opined that Tyler should rarely or never lift or carry any weight, nor should she reach with either arm. She should only occasionally "grasp" or "finger" with either hand. R. 536.

Dr. Olusanya's 2014 statement, provided on a form from the Texas Health and Human Services Commission, largely confirmed his prior assessment. He reiterated that any working activities must be done with frequent breaks, and, at most, Tyler could spend a total of two hours on a given activity (e.g., sitting). Unlike Dr. Olusanya's 2013 statement, however, his 2014 statement cited only back pain as a disabling diagnosis. And Dr. Olusanya opined that Tyler could lift up to 10 pounds, contrary to the 2013 statement determining she could not lift any weight.

The ALJ found that these opinions were unsupported by substantial evidence and were "completely inconsistent with [Dr. Olusanya's] own objective findings of record." R. 77. Referencing Dr. Olusanya's records from various examinations of Tyler from 2011 through

---

[3]Dr. Olusanya noted, however, that this estimate is difficult to make because "[p]ain [] is not on a time clock[.]" R. 535.

- 8 -

2014, the ALJ noted that "Dr. Olusanya's records are almost entirely normal, particularly with the claimant's back, extremity, and lung examination."  R. 77.  The ALJ detailed multiple reports from these examinations in which Dr. Olusanya noted that Tyler complained of pain, but did not note any physical abnormalities.  The ALJ also referenced reports from other Metrocare physicians in which they observed no physical abnormalities in their examination of Tyler.

Two months later, on April 18, 2014, Dr. Varghese completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) ("Mental Assessment").  Dr. Varghese found that Tyler exhibited clinical signs of mental illness, including low energy and chronic depression.  According to Dr. Varghese, Tyler's mental illness resulted in a substantial loss in her ability to work consistently without an unreasonable number of breaks and to cope with normal work stress without exacerbating her pathologically- and psychologically-based symptoms.  Dr. Varghese's Mental Assessment also concluded that Tyler experienced some loss in her ability to remain reliably punctual and maintain regular attendance, maintain concentration and attention for two hours, make simple work-related decisions, ask simple questions, accept instructions and respond appropriately to criticism, get along with coworkers or peers, maintain personal appearance, and behave in an emotionally stable manner.  Dr. Varghese estimated that Tyler's impairments and symptoms would result in Tyler's missing about three days of work per month.  The assessment further noted that Tyler's mental disorders "probably do exacerbate the degree of disability this patient experiences from his/her physical impairments."  R. 786.

The ALJ also gave "little weight" to the Mental Assessment, finding that it also contradicted other evidence in the record. As support, he noted that Tyler "told her providers at Metrocare throughout the record that she is stable, has a good mood, and has no psychiatric symptoms when she is taking her medications as prescribed." R. 77.

Tyler's low GAF scores comprised the final piece of opinion evidence, to the extent that the scores could be considered opinion evidence. The ALJ gave "little weight" to the GAF scores, citing a general unreliability and "conceptual lack of clarity" in all GAF scores. R. 78.

B

Tyler maintains that, because the ALJ rejected or excluded all medical opinion evidence in the record, he impermissibly drew medical conclusions from the available objective evidence in the record. The Commissioner responds that the ALJ was entitled to establish Tyler's RFC without any opinion evidence because the determination of RFC is an administrative, rather than medical, assessment.

The ALJ is solely responsible for determining RFC at the hearing stage. *Ripley,* 67 F.3d at 557 (citing 20 C.F.R. § 404.1546). This responsibility, however, does not permit the ALJ to draw medical conclusions; his inquiry is limited to a legal determination of the RFC based on the record. *Williams v. Astrue*, 355 Fed. Appx. 828, 831-32 (5th Cir. 2009) (per curiam) (citing *Ripley*, 67 F.3d at 557-58) ("[T]he ALJ impermissibly relied on his own medical opinions as to the limitations presented by [various diagnoses] to develop his factual finding."). And while the ALJ is free to reject medical opinions that contradict or are

- 10 -

unsupported by objective evidence, it is error to "mak[e] the RFC determination after rejecting the only medical opinions in the record that addressed the effect of [the claimant's] . . . impairments on [her] ability to work." *Fitzpatrick v. Colvin*, 2016 WL 1258477, at *7 (N.D. Tex. Mar. 31, 2016) (Fitzwater, C.J.) (citing *Thornhill v. Colvin*, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (Horan, J.), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015) (Lynn, J.)). Such a determination necessarily involves the ALJ's substitution of his own medical opinion for those he dismissed. *See id.* "While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's . . . impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*[.]" *Thornhill*, 2015 WL 232844, at *10 (citing *Ripley*, 67 F.3d at 557-58).[4]

---

[4]In *Ripley* the Fifth Circuit explained:

> [the] ALJ is responsible for determining an applicant's residual functional capacity. After considering the evidence, however, we conclude that the ALJ's determination . . . was not supported by substantial evidence. The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back. What the record does not clearly establish is the effect Ripley's condition had on his ability to work . . . . The Commissioner argues that the medical evidence substantially supports the ALJ's conclusion. In making this argument, the Commissioner points to reports discussing the extent of Ripley's injuries. Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's conditions . . . on his ability to perform sedentary work.

In this case, the ALJ gave little weight to, and ultimately rejected, all of the opinion evidence in the record that could be considered. The ALJ appears to have considered some of the treating physicians' diagnoses in concluding that Tyler can "occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday . . . and can understand, remember, and carry out only simple tasks and instructions." R. 64. But other than the treating physicians' opinions and the GAF scores (all of which the ALJ rejected), the record lacks any medical evidence to support a determination that Tyler can perform such work despite her physical and mental impairments. Rather, the record only contains objective medical records and test results, and Tyler's subjective allegations. Accordingly, the court concludes that the ALJ impermissibly relied on his own medical opinion to develop his RFC determination. *See, e.g.*, *Williams*, 355 Fed. Appx. at 832, n.6 (citing *Ripley*, 67 F.3d at 557) ("In *Ripley*, we held that an ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of [the applicant's] claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."). Because the ALJ erred by making an RFC determination without medical evidence addressing the effects of Tyler's impairments on her ability to work, the Commissioner's decision is not supported by substantial evidence. *See Fitzpatrick*, 2016 WL 1258477, at *8.

---

*Ripley*, 67 F.3d at 557-58, & n.27.

IV

"The existence of [*Ripley*] error does not automatically result in reversal of the Commissioner's decision." *Id*. "Procedural perfection in administrative proceedings is not required," and the court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). When an ALJ commits a *Ripley* error, remand "is appropriate only if [the plaintiff] shows that [she] was prejudiced." *Ripley*, 67 F.3d at 557. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id*. at n.22.

In this case, the evidence before the ALJ showed that Tyler suffered from both severe back pain and other physical and mental impairments that, at least in some respects, affected her ability to work. Given this evidence, the ALJ could have reached a different disability determination had he fully developed the record and obtained an admissible expert medical opinion regarding the effects that Tyler's impairments had on her ability to work. Accordingly, the court holds that the ALJ's failure to obtain medical opinion evidence regarding the effects of Tyler's imparments prejudiced her and warrants vacating and remanding the Commissioner's decision for further proceedings consistent with this memorandum opinion. *See Thornhill*, 2015 WL 232844, at *11; *see also Johns v. Colvin*, 2015 WL 1428535, at *20 (N.D. Tex. Mar. 30, 2015) (Ramirez, J.).

\* \* \*

For the foregoing reasons, the Commissioner's decision is VACATED and this matter is REMANDED for further proceedings consistent with this memorandum opinion.

December 20, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE